McGREGOR W. SCOTT
United States Attorney
TODD A. PICKLES
ROSANNE L. RUST
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America


FILED
NOV -1 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:17-cr-212 MCE |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| RUVILA ELIZABETH LIMA, aka "Ruby," | |
| Defendant. | |

I. **INTRODUCTION**

A. **Scope of Agreement.**

The indictment in this case charges the defendant Ruvila Elizabeth Lima, aka "Ruby" (hereinafter the defendant) in Count One with conspiracy to committ bribery, to committ identity fraud, and to commit unauthorized access of a computer, in violation of Title 18, United States Code Section 371, in Counts Two through Nine with unauthorized access of a computer, in violation of Title 18, United States Code Sections 1030(a)(4) & 2, and in Counts Ten and Eleven with fraud involving identification documents, in violation of Title 18, United States Code Sections 1028(a)(1) & 2. The defendant desires and agrees to plead guilty to Count One and Count Ten. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to

PLEA AGREEMENT 1

the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B. Court Not a Party.

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the indictment The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to Count One, charging her with conspiracy to committ bribery, to committ identity fraud, and to commit unauthorized access of a computer, in violation of Title 18, United States Code Section 371, and in Count Ten with fraud involving identification documents, in violation of Title 18, United States Code Sections 1028(a)(1) & 2. The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Remand.

The defendant acknowledges she may be remanded into custody upon the entry of her guilty plea unless the defendant demonstrates by clear and convincing evidence that she does not pose a risk of non-appearance or a danger to the community.

### C. Restitution.

The defendant agrees to pay restitution pursuant to 18 U.S.C. § 3663(a)(3) to the California Department of Motor Vehicles and to any person who, at the time of sentencing or restitution hearing, it has been determined has been injured or who has suffered property damage as the result of the criminal conduct alleged in the information or as set forth in this plea agreement and the factual basis of the agreement, including but not limited to the issuance of California driver licenses or permits to individuals who did not pass the requisite examinations for issuance of the licenses or permits. The defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding. Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the Court.

### D. Fine.

The defendant reserves the right to argue to Probation and at sentencing that she is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is her burden to affirmatively prove that she is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

### E. Special Assessment.

The defendant agrees to pay a special assessment of $100 on each count, for a total of $200, at the time of sentencing by delivering a check or money order payable to the United States District Court

to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### F. Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy

PLEA AGREEMENT 4

Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### G. Asset Disclosure.

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if she fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, she will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.F above, above.

### III. THE GOVERNMENT'S OBLIGATIONS

### A. Dismissals/Other Charges.

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.F (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Estimated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

**B.   Recommendations.**

      1.   Incarceration Range.

The government will recommend that the defendant be sentenced within the applicable guideline range, if the Court finds that the offense level is 15. If the Court finds an offense level higher than 15, the government will recommend that the defendant be sentenced at the low-end of the applicable guideline range. If the Court finds the applicable offense level is less than 15, the United States is permitted to argue in support of a sentence of up to 24 months imprisonment under 18 U.S.C. § 3553(a).

      2.   Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C.   Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

**IV.   ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty:

As to Count One, charging the defendant with Conspiracy to Commit Bribery to Commit Identity Fraud, and to Commit Unauthorized Access of a Computer, in violation of Title 18, United States Code Section 371, the elements are as follows:

1      First, beginning no later than September 2014, and continuing through at least June 2017, there was an agreement between two or more persons to commit at least one crime as charged in the Indictment, that is Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code sections 666(a)(1)(B) and 666(a)(2), Identity Fraud, in violation of Title 18, United States Code section 1028(a)(1), and/or Unauthorized Access of a Computer, in violation of Title 18, United States Code section 1030(a)(4);

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

As to <u>Count Ten</u>, charging the defendant with Fraud Involving Identification Documents, in violation of Title 18, United States Code section 1028(a)(1), the elements are as follows:

First, the defendant knowingly produced an identification document;

Second, the defendant produced the identification document without lawful authority; and

Third, the identification document (a) was to be issued by or under the authority of the State of California, or a political subdivision of the State, (b) was in or affected commerce between one state and other states; or (c) in the course of production, the identification document was transported in the mail.

As used herein, an "identification document" means a document made or issued by or under the authority of the State of California or political subdivision of the State, that, when completed with indictment concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals. 18 U.S.C. § 1028(d).

Additionally, with respect to the objects of the conspiracy in Count One, the elements are as follows:

PLEA AGREEMENT                                     7

For Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code section 666(a)(1)(B):

First, at the times alleged in the Indictment, a member of the conspiracy was an agent of the California Department of Motor Vehicles;

Second, at the times alleged in the Indictment, the Department of Motor Vehicles received federal benefits in excess of $10,000;

Third, a member of the conspiracy accepted and agreed to accept something of value from someone,

Fourth, the member of the conspiracy acted corruptly with the intent to be influenced or rewarded in connection with the business and series of transactions of the Department of Motor Vehicles; and

Fifth, the value of the business and series of transactions to which the payment was related—to wit, California driver licenses—was at least $5,000.

For Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code section 666(a)(2):

First, at the times alleged in the Indictment, a member of the conspiracy was an agent of the California Department of Motor Vehicles;

Second, at the times alleged in the Indictment, the Department of Motor Vehicles received federal benefits in excess of $10,000;

Third, a person gave or offered something of value to the agent of the Department of Motor Vehicles;

Fourth, the defendant or a member of the conspiracy acted corruptly with the intent to influence or reward the defendant in connection with the business and series of transactions of the Department of Motor Vehicles; and

Fifth, the value of the business and series of transactions to which the payment was related—to wit, California driver licenses—was at least $5,000.

As used herein, a "thing of value" may be tangible property, intangible property, or services, so long as it has value.

For Unauthorized Access of a Computer, in violation of Title 18, United States Code Section 1030(a)(4), the elements are as follows:

First, the defendant knowingly accessed without authorization or exceeded authorized access to a computer used in or affecting interstate or foreign commerce or communication;

Second, the defendant did so with the intent to defraud;

Third, by accessing the computer without authorization or exceeding authorized access to the computer, the defendant furthered the intended fraud;

Fourth, the defendant by accessing the computer without authorization or exceeding authorized access to the computer obtained anything of value; and

Fifth, the total value of the defendant's computer use exceeded $5,000 during a one-year period within the conspiracy.

As used herein, the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device.  18 U.S.C. § 1030(e)(1).

The term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.  18 U.S.C. § 1030(e)(6).

The defendant fully understands the nature and elements of the crimes charged in the indictment to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V.   MAXIMUM SENTENCE

### A.   Maximum Penalty.

The maximum sentence that the Court can impose is 5 years of incarceration on Count One and 15 years of imprisonment on Count Ten, for a total term of imprisonment of 20 years, a fine of $250,000 on each count, for a total of $500,000, a three-year period of supervised release and a special assessment

of $100 on each count for a total of $200.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which she is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.     Violations of Supervised Release.**

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years of imprisonment.

**VI.     SENTENCING DETERMINATION**

**A.     Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.     Estimated and Stipulated Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1.     Grouping for Multiple Counts

The parties estimate that Counts One and Ten will be grouped according to U.S.S.G. § 3D1.1 and § 3D1.2. The offense level is determined by the offense for the most serious offense, *i.e.*, the

PLEA AGREEMENT                                                                 10

offense with the highest offense level. *See* U.S.S.G. § 3D1.3(a).  As set forth in the succeeding paragraph, the parties estimate that the highest offense level under the guidelines is under U.S.S.G. § 2C1.1 with respect to Count One.  Defendant however acknowledges if a higher offense level is calculated under a different section for a different count, that section will be used in determining the applicable sentencing guidelines for the grouped counts.

    2.    <u>Grouping for Multiple Objects of Conspiracy</u>

Under U.S.S.G. § 1B1.2(d), where a defendant is convicted of a multi-object conspiracy, the guidelines are calculated as if the defendant was convicted on a separate count for each object, unless the objects are grouped under U.S.S.G. § 3D1.2. *See* U.S.S.G. § 1B1.1.2, Appl. Note 4. Because the objects of the conspiracy to which the defendant is pleading guilty—bribery, identity fraud, and unauthorized access of a computer—are grouped under U.S.S.G. § 3D1.2(d), the offense level is determined by the offense guideline that produces the highest offense level. U.S.S.G. § 3D1.3(b). The parties estimate that the highest offense level under the guidelines is under U.S.S.G. § 2C1.1 with respect to Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code sections 666(a)(1)(B) & 666(a)(2). Accordingly, the parties estimate that the offense guideline under U.S.S.G. § 2C1.1 will be used to determine the offense level for Conspiracy To Commit Bribery, to Commit Identity Fraud, and to Commit Unauthorized Access of a Computer, in violation of Title 18, United States Code Section 371. Defendant, however, acknowledges that if a higher offense level is calculated under a different section, that section will be used in determining the applicable sentencing guidelines for the multi-object count of conviction.

    3.    <u>Base Offense Level</u>:   **12**

The parties agree that defendant was not a public official. Therefore, the base offense level is 12. U.S.S.G. § 2C1.1(b).

    4.    <u>Multiple Bribes</u>:   **+2**

The parties agree that defendant paid and offered more than one bribe in connection with the offense conduct. U.S.S.G. § 2C1.1(b)(1).

1         5.     <u>Value of Benefit Received In Return for Bribes</u>:     **+4 (Estimated)**

The parties currently estimate that the value of the benefit received in return for payment with respect to the defendant's own conduct within the conspiracy, and all relevant conduct under U.S.S.G. § 1B1.3, is no less than $18,000 (no less than 12 permits multiplied by $1,500). Accordingly, the parties currently estimate that, under the current version of the guidelines, the base offense level is increased by no less than 4 levels. U.S.S.G. § 2C1.1(b)(2); U.S.S.G. § 2B1.1(b)(1)(C); U.S.S.G. § 2C1.1, Appl. Note 3. The investigation is on-going.

        6.     <u>Role in the Offense Adjustment</u>:     **0/-2**

The defendant is permitted to argue for up to a two-level minor participant mitigating role adjustment under U.S.S.G. § 3B1.2(b). The United States may oppose any such argument. The parties agree that the defendant is not subject to a minimal participant mitigating role adjustment and the United States shall not argue for an aggravating role adjustment under U.S.S.G. § 3B1.1.

        7.     <u>Acceptance of Responsibility</u>:     **-3**

See paragraph III.B.2 above.

        8.     <u>Criminal History</u>:     **No Agreement**

The parties do not have any agreements as to the defendant's criminal history. The defendant is permitted to object or otherwise challenge any criminal history calculations determined by the Probation Officer and she preserves the right to argue that her criminal history category substantially over-represents the seriousness of his criminal history under U.S.S.G. § 4A1.3(b). For its part, the government is permitted to argue in support of any such calculations by the Probation Officer.

        9.     <u>Departures or Other Enhancements or Reductions</u>:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on the defendant's cooperation (§5K1.1), post-plea obstruction of justice (§3C1.1), or as provided under U.S.S.G. § 2C1.1, Appl. Note 7. The defendant agrees not to seek a departure from the Sentencing Guidelines.

The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a). The government reserves the right to oppose any variance under 18 U.S.C. § 3553(a).

## VII. WAIVERS

### A. Waiver of Constitutional Rights.

The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on her behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate herself.

### B. Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her pleas, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which she is pleading guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate her plea(s), dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.F herein.

PLEA AGREEMENT 13

C. **Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

D. **Impact of Plea on Defendant's Immigration Status.**

Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offenses to which the defendant is pleading guilty. The defendant and her counsel have discussed the fact that the charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

### VIII.  ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

PLEA AGREEMENT                                14

### IX.     APPROVALS AND SIGNATURES

**A.     Defense Counsel.**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 7/31/18

DINA SANTOS, ESQ.
Attorney for Defendant

**B.     Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 7/31/18

RUVILA ELIZABETH LIMA
Defendant

**C.     Court Certified Interpreter/Translator:**

I declare that I am a court certified Spanish-English interpreter/translator. On 7-27-18, I read the entire contents of the foregoing plea agreement to Ruvila Elizabeth Lima, translating the document from English to Spanish.

Dated:

Interpreter/Translator

**D.**   **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated:                                                          McGREGOR W. SCOTT
                                                                United States Attorney

                                                                /s/ Rosanne Rust
                                                                _____
                                                                TODD A. PICKLES
                                                                ROSANNE L. RUST
                                                                Assistant United States Attorneys

PLEA AGREEMENT                                   16

# EXHIBIT "A"

## Factual Basis for Pleas

The defendant Ruvila Elizabeth Lima, aka "Ruby," worked at Dashmesh Truck Driving School in Stockton, California, in 2016. In this capacity, Lima solicited or offered to assist truck driving students and others to obtain permits for their commercial California driver licenses ("CDL") without the individuals having to take or pass the written examination in exchange for a payment of money to Lima and others with whom she was conspiring, including an employee of the California Department of Motor Vehicles ("DMV").

The California DMV is a political subdivision and agency of the State of California that registers vehicles in California and licenses California drivers. The DMV also issues identification cards for individuals in California. The DMV is funded by vehicle registration and licensing fees paid by residents and licensees of the State of California. The DMV also received federal grants, including the following grant money for the following fiscal years (July 1 through June 30): $4,000,000 for fiscal 2013-2014; $1,400,000 for fiscal year 2014-2015; $950,000 for fiscal year 2015-2016, and $12,000 for fiscal year 2016-2017.

The California DMV issues different CDLs, including Class A and Class B commercial licenses and Class C general licenses. The issuance of a Class A, Class B, or Class C CDL affects interstate commerce in that, among other effects, the licenses enable recipients to drive passenger cars or commercial vehicles in other states and on interstate highways.

At all relevant times between 2014 and 2017, in order to obtain a CDL, an applicant was required to pay an application fee, after which an electronic record was generated in the DMV's computer database for the applicant. Thereafter, the applicant was required to pass one or more written examinations based on the type of license. The DMV administered written examinations at most DMV locations. After an individual passed the necessary written examinations for a Class A, Class B, or Class C CDL, a DMV employee would access the DMV's computer database for the applicant's electronic DMV record and input the results. Passing the written portion of the examination would typically result in a permit being issued for the applicant allowing the applicant to operate the vehicle under defined conditions.

The behind-the-wheel driving test was administered by a licensing-registration examiner ("LRE") for the DMV. The DMV administered the behind-the-wheel driving examinations for Class A and Class B commercial CDLs at select DMV locations in California. In contrast, the DMV typically administered behind-the-wheel driving examinations for a Class C general CDL available at most DMV locations. After the applicant passed the requisite behind-the-wheel driving examination administered by the LRE for the Class A, Class B, or Class C CDL, an employee of the DMV would access the DMV's computer database for the applicant's electronic record and input the results. The DMV would then issue the licensee a temporary license from the office where the behind-the-wheel driving examination was administered. Thereafter, an official, hard plastic CDL was printed in Sacramento, California, and was then mailed to the licensee through the United States mail to an address identified in the licensee's application.

The DMV's database was maintained on servers located in Sacramento County, California. This system interacted with remote terminals situated throughout the state and was available to DMV employees whose duties were to create, change, update, or delete records maintained by the system. The DMV database and computer system were used in and affected interstate and foreign commerce and communications. Using identification and passwords unique to each DMV employee, DMV employees could access the DMV's database in Sacramento to update applicants' records. DMV employees were not authorized and were strictly prohibited from accessing, creating, deleting, or altering records without a legitimate business purpose.

PLEA AGREEMENT      A-1

Beginning in 2016, the Department of Homeland Security, Homeland Security Investigations ("HSI") and DMV-Office of Internal Affairs ("DMV-OIA") began an investigation with respect to people being offered the opportunity to obtain commercial CDLs without having to take the written or behind-the-wheel driving examinations in exchange for the payment of money. Through the course of the investigation, HSI identified Dashmesh Truck Driving School in Stockton, California that was potentially connected with its students obtaining fraudulent license. Using confidential informants, HSI and DMV-OIA obtained three permits for Class A CDLs without the operatives passing the written examinations, in exchange for the payment of a total of $4,500.

In particular, on July 7, 2016, two HSI confidential informants ("CI-1" and "CI-2") met with Lima, using the name "Ruby," to discuss CI-2 obtaining a commercial driving permit without taking or passing the requisite examinations. Lima offered to facilitate CI-2 obtaining a permit in exchange for $1,500, with Lima keeping $300 and the remainder paid to the DMV employee or others involved. Lima indicated she needed to place a call to her contact. Telephone records revealed that Lima called Juan Arturo Arroyo Gomez, charged elsewhere in United States v. Freeman, et al., 2:17-cr-207 MCE, On July 8, 2016, CI-2 handed Lima an envelope with $1,500. Lima told CI-2 that "it" (commercial driving permit for CI-2) would be ready "next week." DMV-OIA agents reviewed the DMV database and determined that on July 11, 2016, a DMV employee in the Tracy Field Office named Donald Earl Freeman, Jr., charged elsewhere in *United States v. Freeman, et al.*, 2:17-cr-207 MCE, accessed the DMV database and updated the records for CI-2 to indicate that CI-2 had passed the written test for a commercial CDL. At no point did CI-2 take or pass any written test necessary to obtain a commercial driving permit.

On August 9, 2016, CI-1 inquired of Lima if his/her "friend" could meet with Lima. Later that day, an HSI confidential informant ("CI-3") met with Lima at a parking lot of a fast-food restaurant near the truck-driving school where Lima worked. Lima motioned CI-3 to her car, where CI-3 handed Lima a copy of his/her DMV paperwork, which reflected that CI-3 had failed the commercial driving written test. CI-3 also handed Lima an envelope containing a $1,500 payment. Lima informed CI-3 that she would call CI-1 when the permit was ready. On August 12, 2016, CI-1 sent a text message Lima to tell her that his/her "friend" attempted to pick up his commercial permit and it was not ready. This was a ruse as there was no attempt to pick up the permit as DMV-OIA was aware that no permit had yet been issued. In response, Lima sent text messages to CI-1 apologizing that the permit was not ready and that she would call her DMV contact. An analysis of telephone records revealed that after the text message exchange between CI-1 and Lima, Lima communicated with Arroyo Gomez on August 12, 2016. DMV records showed that also on August 12, 2016, Freeman accessed the DMV database and altered CI-3's records to indicate that CI-3 had passed the commercial written test. At no point did CI-3 take or pass any written test necessary to obtain a commercial driving permit. A few days later, on August 15, 2016, telephone records revealed that Arroyo Gomez communicated with Freeman. Within 15 minutes of those communications between Arroyo Gomez and Freeman, Lima contacted CI-1 to advise that CI-3's permit would be ready later that day.

On October 12, 2016, CI-1 asked Lima if another one of CI-1's "friends" could purchase a commercial driver's permit by depositing the money into a checking account instead of having a meet in person, as Lima had previously offered CI-1 the option to purchase a commercial driving permit by depositing the payment in an unknown checking account. Lima responded that CI-1's friend could deposit the money into the account of her DMV contact and she would text the information immediately. Lima then sent a text message to CI-1 that provided the bank account information for co-defendant Poya Khanjan. Records revealed that Lima and Khanjan shared a common address. Lima also sent a text message CI-1 a picture of a deposit slip bearing the same checking account information. Lima informed CI-1 by text message that the fee was still $1,200 for the DMV contact and $300 for her cut. CI-1 informed Lima that he would pay her $300 cash for her cut or commission. On October 20, 2016, a DMV undercover agent ("UCA") made a deposit of $1,200 into Khanjan's checking account for a commercial driving permit. On October 24, 2016, Lima sent CI-1 by text message a picture of a computer screen shot bearing the DMV UCA's license number. An analysis of telephone records revealed that Lima communicated with Arroyo Gomez on October 24, 2016 and that Arroyo Gomez communicated with Freeman, all within 30 minutes of Lima's communications with CI-1. DMV IA

confirmed that on October 24, 2016, Freeman accessed the DMV database to alter the DMV UCA's record to indicate that the DMV UCA had passed the commercial written test. At no point did the DMV UCA take or pass any written test necessary to obtain a commercial driving permit.

Thereafter, on November 7, 2016, CI-1 met with Lima to pay her the remaining $300 owed for the DMV-UCA's fraudulently obtained permit. At that meeting, Lima told CI-1 that she had ceased working at the truck-driving school and would be traveling out of the country for a while. Lima provided CI-1 the contact information for another person who could help CI-1 obtain additional permits while Lima was away. Lima then gave CI-1 the telephone number for Khanjan. Subsequently, CI-1 had a conversation with Khanjan, who offered to help CI-1 obtain a permit. Lima also continued to communicate with CI-1 about obtaining additional Class A permits, including through May 2017.

On or about June 13, 2017, HSI and DMV-OIA agents executed search warrants for Freeman's and residence, among other items. Freeman consented to an interview and admitted that he had been receiving money from Arroyo Gomez and other brokers in exchange for accessing the DMV's database to alter records to result in a passing score for the written examinations. Freeman informed agents that he typically received $200 for each written examination he fraudulently changed as passing, and estimated that he was fraudulently processing up to 60 permits per month.

Also on or about June 13, 2017, HSI and DMV agents also executed search warrants for the phones and residences of Lima and Arroyo Gomez, among other items. Lima's phone showed contacts with Arroyo Gomez with respect to obtaining fraudulent permit, and Arroyo Gomez's phone showed contacts with Freeman about fraudulent permits. Further, Arroyo Gomez consented to an interview and admitted that he had facilitated the payment for bribe money between Lima and Freeman, with Arroyo Gomez keeping $100 and Freeman getting $200. Arroyo Gomez estimated that he facilitated at least three bribes to Freeman per week from Lima.

An analysis of telephone records and records seized from Lima, among others, revealed no less than 12 identifications and/or permits were issued by Freeman as a result of him obtaining bribes from Lima, paid through Arroyo Gomez. Lima typically charged students at least $1,500 per each permit, (At the time of this plea agreement, the DMV-OIA and HSI are continuing to investigate the case.)

Further, as to Count Ten, on or about May 8, 2017, Lima, working with co-defendant Khanjan, and with Freeman and Arroyo Gomez, charged elsewhere, caused a Class A commercial CDL to be produced with the number Y9130238 to be issued. The Class A CDL was produced after Freeman, at the direction of Lima and Arroyo Gomez, and without authorization, accessed the DMV database in Sacramento to fraudulently access the DMV's record to show the individual with the record number Y9130238 had passed all of the necessary examinations to obtain a Class A commercial CDL. The Class A commercial CDL, which bore the seal of the State of California, permitted the recipient to drive commercial tractor-trailer trucks on the interstate highways and was mailed to the recipient.

As part of this agreement, the defendant Ruvila Elizabeth Lima, aka "Ruby," admits that, beginning no later than July 2016 and continuing through at least May 2017, she knowingly and intentionally conspired with others to commit bribery, to commit identity fraud, and to commit unauthorized access of a computer with respect to the production of California driver licenses and/or permits, and that on or about May 8, 2017, she caused a commercial CDL to be fraudulently issued by the DMV.

The conduct set forth above is not meant to be exhaustive and is merely an example of Lima's conduct in furtherance of the conspiracy to commit bribery, to commit identity fraud, and to commit unauthorized access of a computer, and committing fraud involving identification documents.

I have reviewed the entire factual basis in Exhibit A above and, as far as my own conduct is concerned, I adopt it as my own true statement.

DATED: 07/31/18

_____
RUVILA ELIZABETH LIMA, aka "Ruby"
Defendant